IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

04 10543 JLT

| | |
|---|---|
| XCEL SOFTWARE, INC., | : |
| Plaintiff | : |
| v. | : CIVIL ACTION NO. _____ |
| INSIGHT DIRECT, INC., | : COMPLAINT |
| Defendant | : FILING FEE PAID: |
| | : RECEIPT # _____ |
| | : AMOUNT $ _____ |
| | : BY DPTY CLK _____ |
| | : DATE _____ |

Plaintiff Xcel Software, Inc. ("Xcel" or "Plaintiff"), by its attorneys, Boston Law Group, LLP, for its complaint against Defendant Insight Direct, Inc. ("Insight" or "Defendant"), alleges on its own knowledge and otherwise on information and belief as follows:

## INTRODUCTION

1. Xcel brings this action against Defendant for trademark infringement, false designation of origin, unfair competition, violation of Massachusetts General Laws chapter 93A, and tortious interference with prospective economic advantage. As described more fully below, Defendant has violated Xcel's intellectual property rights by unlawfully adopting and using a trademark which is identical to a trademark owned by Xcel, for use in connection with highly-similar goods. Defendant has continued to engage in its illegal behavior even after being made aware of Xcel's superior right to use of the trademark in connection with such goods and being asked to cease and desist such unlawful behavior.

## PARTIES

2. Plaintiff Xcel Software, Inc. is a Massachusetts corporation with its principal place of business located at 124 Mount Auburn Street, Suite 200N, Cambridge, MA 02138.

3. On information and belief, Defendant Insight Direct, Inc. is a Massachusetts corporation with its principal place of business located at 180 Canal Street, Boston, MA 02114.

## JURISDICTION AND VENUE

4. This case arises under the trademark laws of the United States, 15 U.S.C. § 1051 et seq. The Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1338(a).

5. Plaintiff's state law unfair competition claim is joined with a substantial and related claim under the trademark laws of the United States, and, thus, the Court also has jurisdiction over that claim pursuant to 28 U.S.C. § 1338(b).

6. Plaintiff's common law claim is closely related to its claim under the trademark laws and forms part of the same case or controversy as those federal claims. The Court thus has jurisdiction over Plaintiff's common law claim pursuant to 28 U.S.C. § 1367.

7. The Court possesses personal jurisdiction over the Defendant by virtue of the fact that Defendant is located within the Commonwealth and, on information and belief, is a corporation organized under the laws of the Commonwealth.

8. A substantial part of the events giving rise to the claims described herein occurred in this District. Venue is thus proper in this District pursuant to 28 U.S.C. § 1391.

## FACTS COMMON TO ALL COUNTS

9. Xcel's primary product is a computer-software program which it licenses to third parties under the trademark SERVICEWORKS. The SERVICEWORKS software program was created by Xcel in the mid-1980's.

10. The SERVICEWORKS program is service-management software which assigns and schedules tasks, performs job and time-tracking functions, manages client and contact

information, maintains purchase and sale records, automates, stores and manages business information, and aggregates information concerning customers.

11.     Xcel has licensed its SERVICEWORKS software program to hundreds of third parties, including universities, hospitals, government institutions, utility companies, professional-service firms, and many others.

12.     Xcel is the owner of United States trademark application serial number 78/323,670, for the mark SERVICEWORKS for "Computer software for use in connection with automating, storing and managing business information, assigning and scheduling tasks to be performed, managing client and contact information, maintaining purchase and sale records, performing job and time-tracking functions, and aggregating information concerning customers." See Exhibit A, a print-out from the U.S. Patent and Trademark Office's database showing the particulars of the SERVICEWORKS application.

13.     Xcel also owns extensive common-law rights to the SERVICEWORKS trademark, which it has used continuously in connection with such software and related services since at least as early as January, 1989. Xcel's use of the SERVICEWORKS mark has extended throughout the United States and into foreign countries.

14.     In mid-January, 2004, Xcel learned that Defendant had adopted and begun using the trademark SERVICEWORKS in connection with a directly competitive computer software program.

15.     Defendant's computer software program apparently contains features extremely similar to those of Xcel's SERVICEWORKS product, including task-assigning and scheduling features, job and time-tracking functions, elements for managing client and contact information and conducting maintenance of purchase and sale records, and features for aggregation of

customer information and accounting functions. See Exhibit B, a print-out of pages from Defendant's Web site at <insightdirect.com>.

16.   The potential for consumer confusion between Xcel's and Defendant's software programs is increased by the fact that both Xcel and Defendant locate their corporate headquarters in the greater Boston, Massachusetts area.

17.   Xcel immediately demanded, by certified letter, that Defendant cease and desist all use of the SERVICEWORKS trademark, as well as any confusingly-similar trademark, in connection with service-management software. See Exhibit C, Xcel's letter of January 20, 2004 to Defendant.

18.   In a telephone conference with Xcel's counsel on January 21, 2004, Defendant's president, Mark Kushinsky ("Kushinsky"), stated that Defendant was considering discontinuing its use of the SERVICEWORKS mark. Counsel for Xcel demanded a definite statement of intention from Defendant as to its use of the mark.

19.   On January 27, 2004, Kushinsky wrote Xcel's counsel, stating that Defendant "was in the process of making plans to remove the our [sic] product 'ServiceWorks' from our Website." See Exhibit D, copy of correspondence from Kushinsky.

20.   Counsel for Xcel responded in writing to Defendant later that day, offering Defendant until March 1, 2004 to phase out all use of the SERVICEWORKS mark. See Exhibit E, Xcel's letter of January 27, 2004 to Defendant.

21.   Defendant failed to respond to Xcel's second demand that it cease and desist all use of the SERVICEWORKS trademark, and Defendant continues to use the SERVICEWORKS mark in connection with service-management software.

22. Defendant's conduct will continue to create an extremely high likelihood of confusion among those consumers encountering the SERVICEWORKS trademark. Defendant's conduct has harmed and will continue to harm Xcel's reputation and goodwill, and has caused the loss of sales and profits Xcel would have made but for Defendant's illegal acts.

## COUNT ONE
### (Trademark Infringement and False Designation of Origin Under the Lanham Act, 15 U.S.C. § 1125(a))

23. The allegations set forth in paragraphs 1 through 22 are incorporated by reference.

24. Continuously and since at least as early as January, 1989, Plaintiff has owned the trademark SERVICEWORKS.

25. As noted above, the trademark SERVICEWORKS is the subject of a pending application for registration at the U.S. Patent and Trademark Office for use by Plaintiff in connection with "Computer software for use in connection with automating, storing and managing business information, assigning and scheduling tasks to be performed, managing client and contact information, maintaining purchase and sale records, performing job and time-tracking functions, and aggregating information concerning customers."

26. Continuously and since at least as early as January, 1989, Plaintiff has used the trademark SERVICEWORKS to identify its products and services and to distinguish them from those offered by others.

27. Plaintiff has prominently displayed its marks in connection with its computer software on its Web site, in marketing and promotional materials, and on the computer software itself. Plaintiff's marks are displayed in conjunction with the goods and services at issue here.

28. As a result of this lengthy and geographically widespread use, Plaintiff has developed broad common law rights in its SERVICEWORKS trademark.

29. Defendant has infringed Plaintiff's mark in interstate commerce by selling and offering for sale goods and services highly similar to those offered for sale by Plaintiff, all while using the SERVICEWORKS trademark to promote such goods and services. The use of this trademark by Defendant is without permission or authorization of Plaintiff. Use of the trademark by Defendant has caused actual confusion and mistake and has deceived. Defendant's use of the trademark will continue to cause confusion and mistake and to deceive, as evidenced by:

(i) the identical nature of Plaintiff's protected mark and Defendant's infringing mark;

(ii) the highly-similar nature of Plaintiff's software program and Defendant's software program;

(iii) the strength of Plaintiff's common-law and statutory rights to its mark;

(iv) the close geographical proximity of Plaintiff's and Defendant's headquarters offices;

(v) the fact that an extremely high likelihood of confusion exists; and

(vi) Defendant's bad faith in continuing to use its infringing mark and false designation of origin, despite its knowledge of Plaintiff's mark and product and the fact that Plaintiff had asked it to stop such usage.

30. Defendant's acts of trademark infringement and false designation of origin have been committed with the intent to cause confusion and mistake, and to deceive.

31. At all material times, Plaintiff has displayed its marks with a symbol giving notice that it is the owner of the SERVICEWORKS trademark.

32.  Plaintiff has repeatedly requested that Defendant cease and desist from its acts of trademark infringement and has given Defendant actual notice of the fact that Plaintiff's SERVICEWORKS mark is its protected property and that Defendant's acts will cause confusion. Defendant has nonetheless refused to cease its infringement.

33.  Defendant has infringed on Plaintiff's marks as alleged herein with the intent to deceive the public into believing the goods and services sold by Defendant are provided by, approved by, sponsored by or affiliated with Plaintiff.

## COUNT TWO
### (Unfair Competition Under the Lanham Act, 15 U.S.C. § 1125(a))

34.  The allegations set forth in paragraphs 1 though 33 are incorporated by reference.

35.  Defendant's conduct in using its infringing mark has caused confusion and mistake and has deceived, and will continue to do so.

36.  Defendant's acts of trademark infringement and false designation of origin have been committed willfully with the intent to cause confusion and mistake, and to deceive.

37.  Defendant has unfairly competed with Plaintiff as alleged herein with the intent to deceive the public into believing the goods and services offered by Defendant are provided by, approved by, sponsored by or affiliated with Plaintiff.

## COUNT THREE
### (Violation of Massachusetts Unfair Competition Law, Mass. G.L. c. 93A)

38.  The allegations set forth in paragraphs 1 through 37 are incorporated by reference.

39.  At all relevant times, Plaintiff and Defendant have been engaged in the conduct of trade and commerce in the Commonwealth of Massachusetts, and Defendant's actions constituting unfair competition took place primarily and substantially in the Commonwealth of Massachusetts.

40.  By its conduct as set forth above, Defendant has willfully or knowingly engaged in unfair and deceptive acts and practices in violation of G.L. c. 93A, §§ 2 and 11.

41. Defendant has unfairly competed with Plaintiff as alleged herein with the intent to deceive the public into believing the goods and services sold and offered for sale by Defendant are provided by, approved by, sponsored by or affiliated with Plaintiff.

42. As a result, Plaintiff has suffered harm and damages, including a loss of money or property, for which Defendant is liable.

## COUNT FOUR
### (Tortious Interference With Prospective Economic Advantage)

43. The allegations set forth in paragraphs 1 through 42 are incorporated by reference.

44. Plaintiff has had and will continue to have a reasonable expectation of economic advantage with respect to sales of licenses to its computer software programs and related services to third parties.

45. Defendant has interfered intentionally and with malice with Plaintiff's prospective economic advantage, as described above.

46. Defendant's interference has proximately caused the loss of Plaintiff's prospective gain.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant on all Counts, granting Plaintiff the following forms of relief:

(1) a permanent injunction enjoining and restraining Defendant and its agents from

(a) directly or indirectly using the term SERVICEWORKS, or any other mark, word, or name similar to Plaintiff's mark which is likely to cause confusion or mistake or to deceive;

(b) offering software programs and/or related services for sale or license to third parties in conjunction with Plaintiff's trademark or any confusingly similar trademark;

- 9 -

(2) an order directing Defendant to destroy all existing materials bearing the mark SERVICEWORKS or any similar mark, word or name;

(3) damages, including Defendant's profits and the actual damages suffered by Plaintiff as a result of Defendant's acts of infringement and unfair competition;

(4) treble damages on Plaintiff's claims under the Lanham Act and the Massachusetts unfair competition statute;

(5) attorneys' fees on Plaintiff's claims under the Lanham Act and the Massachusetts unfair competition statute;

(6) punitive damages on Plaintiff's state common law claim;

(7) interest;

(8) costs; and

(9) such other and further relief as the Court deems just and proper.

Respectfully submitted,

Xcel Software, Inc.

By: _____
Sean Ploen (BBO # 641279)
BOSTON LAW GROUP, LLP
20 Park Plaza, Suite 637
Boston, MA  02116
Tel. (617) 426-6800
Attorney for Plaintiff

Dated: March 17, 2004

### Corporate Disclosure Statement Pursuant to Local Rule 7.3

Pursuant to Local Rule 7.3, Xcel Software, Inc. ("Xcel") submits the following corporate disclosure statement:

Xcel does not have any parent corporations, and no publicly held company owns ten percent (10%) or more of Xcel's stock.

By: _____
Sean Ploen, Esquire
BOSTON LAW GROUP, LLP
20 Park Plaza, Suite 637
Boston, MA 02116
Tel. (617) 426-6800
Fax (617) 426-6802
Attorney for Plaintiff
BBO # 641279

Dated: March 17, 2004